IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC. | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO.  06-5252 |
| | : | |
| MARK E. BAKER | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                                                                 February 25, 2008
UNITED STATES MAGISTRATE JUDGE

Presently before the Court and ripe for resolution are four pretrial motions.  Plaintiff, Aamco Transmissions, Inc. ("AAMCO") has filed a Motion for Admission to Practice of James A. Goniea Pursuant to Local Rule 83.5.2 (Doc. 18), a Motion for Protective Order to Stop the Deposition of James A. Goniea Pursuant to Rule 26(c) (Doc. 22), and a Motion to Strike Defendant's Jury Demand (Doc. 27).  Defendant and Counterclaimant, Mark E. Baker, has filed a Motion for Sanctions. (Doc. 32).  We consider these motions pursuant to the Order of the Honorable Edmund V. Ludwig of December 7, 2007 appointing this Magistrate Judge as a Special Master pursuant to Local Rule of Civil Procedure 72.1 and in accordance with 28 U.S.C. § 636(b)(2) and Fed. R. Civ. P. 53.  In doing so, we note that this Court held oral argument on February 7, 2008.  At that time, the Court inquired of counsel as to their understanding of the Court's role "in terms of the finality of any determination that I make."  It was suggested, and both parties agreed, that whatever decision I made would be final with respect to these motions.  (Tr. 2/7/08 at 2-3).  Judge Ludwig has agreed.  My decision, then, will

be deemed the decision of the District Court and the motions will require no further action by Judge Ludwig. We now memorialize our determination of the motions by Memorandum Opinion and Order.

**1.   Motion for Admission of James A. Goniea Pursuant to Local Rule 83.5.2; and**

**2.   Motion for Protective Order to Stop the Deposition of James A. Goniea Pursuant to Rule 26(c)**

For reasons that will be self-evident, we treat these motions together. Plaintiff, through its docket counsel, William B. Jameson, Esq., seeks the admission of James A. Goniea, Esq., a vice-president and general counsel of AAMCO, to practice before this Court for the purpose of this case. AAMCO represents that Mr. Goniea was hired as vice-president and general counsel in September 2006, that he has "extensive franchise litigation experience," and that he was formerly a partner with the firm of Sonnenshein Nath & Rosenthal, LLP, where he often represented franchisors in litigation. (Doc. 18 at 3). Attached to the motion is Mr. Goniea's affidavit, in which he declares that he is admitted to practice law in the states of New York and California and has also been admitted in United States District Courts for the Southern District of New York, the Southern and Northern Districts of California, the Eastern District of Michigan and the Third Circuit Court of Appeals. Mr. Goniea also declares that he is "a member of the aforesaid bars in good standing." (Doc. 18-3 at 1).

Mr. Baker does not challenge Mr. Goniea's credentials or fitness to appear before this Court but opposes the admission solely on the grounds that he "is or likely will be a trial witness." (Doc. 19 at 3). We do not accept this as a proper basis to oppose the *pro hac vice* motion, although we recognize it would potentially have an impact upon the scope of his participation as counsel and potentially could preclude him from acting as an advocate at trial. Accordingly, we will grant the

*pro hac vice* motion, but for the reasons set out below reserve further ruling on the question of whether he may participate as an advocate at trial.

The question of the extent of Mr. Goniea's role falls within the exercise of our discretion and may properly be decided in the context of a *pro hac vice* motion. *See Rounick v. Firemans Fund Ins. Co. of Wis.*, Civ. A. No. 95-7086, 1996 U.S. Dist. LEXIS 6864 (E.D. Pa. May 20, 1996); *Montgomery County v. Microvote Corp.*, Civ. A. No. 97-6331, 2000 U.S. Dist. LEXIS 3708, *3 (E.D. Pa. Mar. 16, 2000). This discretion will be exercised with particular reference to the Pennsylvania Rules of Professional Conduct ("Pa. R.P.C."), which are the standards governing professional conduct in this district. *See* Local Civ. R. 83.6(IV)(B). In the opposition to this motion, Mr. Baker relies principally upon Rule 3.7(a) of the Pa. R.P.C. which provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

Pa. R.P.C. 3.7(a).

Mr. Baker asserts that Mr. Goniea is, in fact, a necessary witness under Pa. R.P.C. 3.7(a). This assertion is predicated in substantial part upon the fact that he authored the letter which terminated Mr. Baker as an AAMCO franchisee. This termination is the central issue in this litigation. Mr. Baker notes that Mr. Goniea acted in his capacity as "Vice President & General Counsel" after having "only been employed in that position for approximately two months." (Doc. 36 at 2). Mr. Baker further asserts that because Mr. Goniea had been so employed for just a short period of time, he could not have had significant knowledge of AAMCO's practices and procedures to properly effectuate the termination. Implicit in this argument is the suggestion that AAMCO's

alleged deviation from its purported practices and procedures provides evidentiary value to Mr. Baker's claim that the termination was wrongful and in violation of the fiduciary duty which AAMCO allegedly owed to him.  Mr. Baker further notes that AAMCO has submitted Mr. Goniea's affidavit in support of the motion, and he should in any event be entitled to "probe the veracity of the statements [in the affidavit]."  (Doc. 44 at 2-3).

The materials submitted by AAMCO actually include two affidavits from Mr. Goniea. (Docs. 20-3 and 39).  These affidavits make it clear that he did, in fact, have some role in the termination of Mr. Baker's franchise, but the extent of that role and the manner in which Mr. Goniea was acting is open to some question.  We do know that Mr. Goniea was involved in activities leading up to a November 4, 2006 meeting between representatives of AAMCO and Mr. Baker and that he (Mr. Goniea) made an affirmative decision not to attend the meeting because he knew that Mr. Baker would appear without counsel.  (Doc. 20-3 at ¶ 7).  He did, nonetheless, write to Mr. Baker on November 22, 2006 on the topic of a "compromise" that apparently grew out of the November 4th meeting and Mr. Baker's alleged failure to follow through on the compromise.  In the same letter, he set out an AAMCO decision to terminate the franchise if Mr. Baker did not sign the document memorializing the compromise.  (Doc. 20-3 at ¶ 3.a & Ex. A).  Mr. Goniea also acknowledges his receipt of an e-mail from Mr. Baker dated November 26 setting out Mr. Baker's view of the November 22nd letter and a November 28th e-mail (6:27 a.m.) which referred to certain undertakings made by Mr. Baker as well as a direct conversation with Mr. Goniea that occurred "yesterday."[1] (Doc. 20-3 at ¶¶ 4.a, 4.b & Exs. C, D).

---

[1] In Mr. Goniea's second affidavit, he states that he did recall one telephone conversation with Mr. Baker which he stated "was limited to attempting to achieve a settlement of [AAMCO]'s disputes with Mr. Baker."  (Doc. 39 at 4).

In order for a witness to be deemed necessary, he must have "crucial information" in his possession which must be divulged. *Commercial Credit Bus. Loans v. Martin*, 590 F. Supp. 328, 335 (E.D. Pa. 1984). Evidence in the possession of a witness which is cumulative or obtainable elsewhere will not be deemed "necessary." *Albert M. Greenfield & Co., Inc. v. Alderman*, 52 Pa. D. & C.4th 96, 115 (Pa. Comm. Pl. 2001) (citing ABA Ann. Model R.P.C. 3.7 cmt. at 9, and *Kehrer v. Nationwide Ins. Co.*, 21 Pa. D. & C.4th 385, 389 (Pa. Comm. Pl. 1994)). While we have some question about whether Mr. Baker has established on the record before us that the Goniea evidence is "necessary" and not "cumulative or obtainable elsewhere," we are concerned about not giving Mr. Baker the opportunity to further explore the topic by way of the properly noticed deposition of Mr. Goniea, particularly in light of the fact that Mr. Baker had identified Mr. Goneia as a potential witness in his Fed. R. Civ. P. 26(a) disclosures prior to AAMCO's seeking to have him admitted *pro hac vice*. This then brings us to AAMCO's Motion for Protective Order to Stop the Deposition of James A. Goniea Pursuant to Rule 26(c).

While depositions of opposing counsel can be troublesome, there is nothing in the Rules which precludes them. Indeed, Fed. R. Civ. P. 30(a) clearly states that "[a] party may, by oral questions, depose any person . . . ." In considering whether the deposition of opposing counsel should go forward, this Court in *Frazier v. Southeastern Pennsylvania Transportation Authority*, 161 F.R.D. 309 (E.D. Pa. 1995), identified three factors to take into account:

> (1) the extent to which the proposed deposition promises to focus on central factual issues, rather than peripheral concerns;
>
> (2) the availability of the information from other sources, viewed with an eye toward avoiding cumulative or duplicative discovery; and
>
> (3) the harm to the party's representational rights resulting from the

attorney's deposition.

*Frazier*, 161 F.R.D. at 313.

It has certainly been demonstrated by Mr. Baker that Mr. Goniea played some role in the termination decision. We believe that a deposition properly focused on central issues could aid in the ultimate determination to be made regarding Mr. Goniea's role. While we accept that Mr. Goniea has articulated in his affidavit that his conduct was in his capacity as counsel and would, therefore, suggest some privilege issues (Doc. 20-3 at 1), it is clear that there would be limitations to the exercise of the privilege — certainly to the extent of his communications with Mr. Baker and, arguably, to the extent to which he may have been participating in a business decision as opposed to providing legal advice. While Mr. Goniea's affidavit offers substantial reason as to why he might not be a necessary witness, we conclude that it would be inappropriate to deny Mr. Baker the opportunity to question Mr. Goniea concerning certain aspects of his involvement.[2] Even accepting the limitations upon the permissible extent of the questioning given attorney-client and other relevant privileges, we believe that Mr. Baker should be given the opportunity to establish whether the invocation of the privilege has been proper. *See In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 429, 435 (E.D. Pa. 1981).

Thus, we will allow the deposition to go forward within thirty (30) days of the date of the order accompanying this memorandum opinion and at a time convenient to counsel but only under circumstances where there is an opportunity for immediate court involvement as may be needed. Counsel are directed to contact chambers to advise as to dates when they would like the deposition

---

[2] The occasion where Mr. Goniea identified a telephone communication directly with Mr. Baker during a period just prior to the issuance of the termination letter would, for example, appear to be the proper subject of discovery.

to proceed so that arrangements may be made for it to be taken in this Court's jury room or a conference room adjacent to this Court's chambers. The Court will be available to resolve, on an immediate basis, any issues with respect to the scope of the questioning and the assertion of any privileges that may arise during the deposition.

Finally, we do not accept that the circumstance with respect to Mr. Goniea potentially being deemed a necessary witness necessarily would preclude his *pro hac vice* admission. The focus of Pa. R.P.C. 3.7(a) has to do with trial counsel's role as an advocate before the jury, as opposed to his role with respect to other responsibilities that he may have as counsel in the case. Thus, the *pro hac vice* motion will be GRANTED without prejudice to Mr. Baker having the right to seek reconsideration as to Mr. Goniea's role as active trial counsel after the deposition. The motion for protective order will be DENIED. The deposition of Mr. Goniea will be permitted to proceed under the conditions outlined above. Upon the completion of that deposition, Mr. Baker will be given twenty (20) days to seek reconsideration, incorporating those reasons set out in his opposition to the *pro hac vice* motion and such other reasons as may be established as a result of the taking of Mr. Goniea's deposition.[3]

### 3. Motion to Strike Defendant's Jury Demand

AAMCO has filed a motion to strike Mr. Baker's jury demand. In support of its motion, AAMCO relies upon the jury trial waiver provision set out in the franchise agreement with Baker of July 11, 2003. Specifically, paragraph 21.2 of the agreement reads:

> **Jury Trial Waived.** Franchisee and AAMCO hereby agree that they

---

[3] We acknowledge that we have not commented upon the question of the effect of Mr. Goniea's possible disqualification upon AAMCO's representational interest. We see no need to deal with this question at this time but will do so as necessary upon any reconsideration of this motion.

> shall and hereby do waive trial by jury in any action, proceeding or counterclaim, whether at law or at equity, brought by either of them, or in any matter whatsoever which arises out of or is connected in any way with this Agreement or its performance.

(Doc. 28 at 72).

Mr. Baker argues that he did not knowingly or voluntarily waive his right to a jury trial and that AAMCO's Director of Franchise Administration expressly told him that he would have the right to "mediate or arbitrate any matter." (Doc. 30 at 2). Mr. Baker also asserts that any waiver could not be deemed knowing or voluntary in that the waiver provision was not the subject of negotiation and was presented as a "take-it-or-leave-it proposition by AAMCO." (Doc. 30 at 3).

The law is clear that while the right to a jury trial is guaranteed by the Seventh Amendment, it can be waived as long as that waiver is properly deemed to be knowing and voluntary. *See, e.g., Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212, 222 (3d Cir. 2007). To assist us in determining whether a waiver would be deemed knowing and voluntary, the parties have drawn to our attention two sets of overlapping factors that other courts have considered. Mr. Baker would have us rely on Judge Waldman's opinion in *AAMCO Transmissions, Inc. v. Marino*, Civ. A. No. 88-5522, 1990 U.S. Dist. LEXIS 1270 (E.D. Pa. Feb. 7, 1990) (Waldman, J.), where he identified five factors (the "Waldman factors"):

> (1) whether the parties possessed equal bargaining power; (2) whether the wavier provision was conspicuous; (3) whether the waiver provision was a bargained-for term of the agreement; (4) whether the agreement was subject to negotiation; and (5) whether the parties possessed similar business or professional experience.

*Marino*, 1990 U.S. Dist. LEXIS 1270 at *3.

AAMCO asks us to be guided by the factors identified by Judges Rice and Ludwig (the

"Rice/Ludwig factors") in two more recent cases: *Cottman Transmission Sys. v. McEneany*, Civ. A. No. 05-6768, 2007 U.S. Dist. LEXIS 1892 (E.D. Pa. Jan. 4, 2007) (Rice, M.J.), and *Coleman v. Ameriprise Fin. Servs., Inc.*, Civ. A. No. 05-6408, 2007 U.S. Dist. LEXIS 48888 (E.D. Pa. July 5, 2007) (Ludwig, J.), where four factors are identified:

> (1) whether there was a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the clause containing the waiver was inconspicuous; and (4) whether the opposing party had an opportunity to negotiate contract terms.

*McEneany*, 2007 U.S. Dist. LEXIS 1892 at *6-7; *Coleman*, 2007 U.S. Dist. LEXIS 48888 at *3. *Accord Bishop v. GNC Franchising*, Civ. A. No. 05-827, 2006 U.S. Dist. LEXIS 57947 (W.D. Pa. Jan. 13, 2006); *First Union Nat'l Bank v. United States*, 164 F. Supp.2d 660 (E.D. Pa. 2001); *Hydramar, Inc. v. General Dynamics Corp.*, Civ. A. No. 85-1788, 1989 U.S. Dist. LEXIS 15784 (E.D. Pa. Dec. 29, 1989).[4]

The significant difference between the four Waldman factors and the five Rice/Ludwig factors goes to the level of sophistication of the parties. Judge Waldman would have us consider whether the parties "possessed equal bargaining power," *Marino*, 1990 U.S. Dist. LEXIS 1270 at *3, while Judges Rice and Ludwig would focus the inquiry on whether there was a "gross disparity in bargaining power between the parties." *McEneany,*, 2007 U.S. Dist. LEXIS 1892 at *6-7; *Coleman*, 2007 U.S. Dist. LEXIS 48888 at *3. We believe that logic, common sense and commercial reality support the Rice/Ludwig factors over the Waldman factors. Applying that standard, we do not see how the waiver can be deemed involuntary. While one might conclude that

---

[4] We note that Judge Joyner's opinion in *First Union Nat'l Bank,* which cites the same four Rice/Ludwig factors, is cited with approval by the Third Circuit. *See Tracinda,* 502 F.3d at 222.

Baker might not have bargaining power equal to AAMCO, in no way could it be said that there was a "gross disparity of bargaining power."

The record establishes that as of July 2003 when Mr. Baker signed the franchise agreement, he had a degree from California State Polytechnic University in Pomona, California and had more than 17 years of business experience, including extensive experience in management. (Doc. 28 at 9 (Ex. B, Baker C.V.)). Further, the record before us demonstrates that there was a lengthy and detailed discussion at a Board of Review meeting conducted by Gary Zimmerman, AAMCO's Director of Franchise Administration, with Mr. Baker, Jerry Ferrier, AAMCO's Director of Financial Services, and Greg Matecki, AAMCO's CFO. A review of the transcript of that discussion (Doc. 28 at 15-62) makes it clear that Mr. Baker had undertaken a careful and deliberate process in coming to a decision to acquire the assets of the previous AAMCO franchise holder, which included, subject to AAMCO's approval, the AAMCO franchise. During the course of that conversation, Mr. Baker told Mr. Zimmerman that he had "researched a lot of automotive franchises." (*Id*. at 17). He made reference to looking at MAACO, Meineke and BrakeMasters franchises and narrowed his consideration down to MAACO and AAMCO. He told Zimmerman that he did a lot of research into business ownership and cash flow and had talked to at least seven AAMCO dealers. (*Id*.). The transcript further reveals that Baker had concluded that he felt that he would be able to turn the AAMCO dealership into a business that would be more profitable than it had been with the previous franchisee. He had considered demographics and had otherwise undertaken a careful business analysis, all of which led him to conclude that he wanted to accept the opportunity to acquire the AAMCO franchise. (*Id*. at 11-19).

It was following upon this discussion that Mr. Zimmerman began to go through the

contractual terms of the franchise agreement. Specific reference was made to paragraph 21.2, which concerns the jury waiver. Baker's counsel is correct that Mr. Zimmerman did reflect, with respect to the discussion over the jury waiver issue, that "[n]one of that should come to pass because under 22.1, there is a provision for mediation and arbitration," and that Baker indicated after this discussion that he had no questions and thanked Mr. Zimmerman for his explanation. (*Id.* at 59.) We conclude, however, based upon what we consider to be a fair reading of this transcript, that Mr. Baker did not have any significant concern with respect to the issue of jury waiver. He had knowingly and voluntarily decided, for what he considered to be good and substantial reasons, that AAMCO was the right opportunity for him. There is no reason to believe that he gave any thought whatsoever to the particulars as to whether or not a dispute over his termination would be resolved by way of mediation, arbitration or trial with or without a jury or that he relied upon Mr. Zimmerman's explanation of paragraph 22.1.[5] In addition, we do not believe that the arguably confusing statement made by Mr. Zimmerman suggesting that any dispute would be resolved by mediation and arbitration would have reasonably caused Mr. Baker to think that any dispute would be resolved by a jury trial.

We conclude that Mr. Baker had a high level of sophistication, had very carefully vetted this business opportunity, and had made a determination that it was an opportunity he wanted to pursue. Further, there was no focus and little apparent interest by him in the question of dispute resolution, and he was happy to accept knowingly and voluntarily the circumstance that he would be waiving a trial by jury should a dispute arise that might ultimately lead to his termination. In no way can it be said that there was a gross disparity in bargaining position.

---

[5] We also note that when asked at his deposition about the jury wavier provision, Mr. Baker stated that he had no recollection of it. (Doc. 31-2 at 6).

11

We also conclude that, while it might be argued that he was not free to quarrel about any particular clause or phrase in the franchise agreement, he did explore other business opportunities and he chose to sign on with AAMCO. For all these reasons, we are of the opinion the waiver was knowing and voluntary. The motion to strike jury demand is GRANTED.

### 4. Baker's Motion for Sanctions

Defendant and counterclaimant, Mark Baker, has moved the Court for the entry of a sanctions order against plaintiff for plaintiff's violation of Local Rule 5.1.3, "Excluded Personal Identifiers," in the October 24, 2007 filing of its Motion to Strike Defendant's Jury Demand. AAMCO's motion had included as an attachment an unredacted copy of the franchise application that Baker submitted to AAMCO when he was seeking to become a franchisee. It is agreed by AAMCO and its counsel that the filing did, in fact, contain personal identifiers, including Mr. Baker's social security number and date of birth.

Mr. Baker's counsel became aware of the filing early in the morning of October 25, 2007. He promptly notified AAMCO's counsel, and email and telephone communications pertaining to the issue took place between counsel during the course of that day. That communication resulted in a resolution of the problem, at least in part, to the extent that AAMCO agreed to refile its motion with a redacted attachment that would eliminate the personal information but that still included certain information with respect to Mr. Baker's employment history. Further discussion and negotiation took place between counsel for the parties involving the question of further redactions or the potential of filing under seal, but those matters were not resolved. On November 19, 2007, Baker filed his motion for sanctions.

Local Rule 5.1.3 states:

> Excluded Personal Identifiers. As documents in civil cases may be made available for personal inspection in the office of the clerk of court at the United States Courthouse or, if filed electronically, may be made available on the court's Electronic Case Filing system; such personal identifiers as Social Security numbers, dates of birth, financial account numbers and names of minor children should be modified or partially redacted in all documents filed either in traditional paper form or electronically.

Local Civ. R. 5.1.3.

The record before us clearly establishes that AAMCO's counsel submitted a filing with the knowledge that it would be publicly available and that it contained personal information which was not "modified or partially redacted" and was, therefore, in violation of Local Rule 5.1.3. At the same time, the record is equally clear that when AAMCO's counsel had this error brought to his attention by opposing counsel, he promptly corrected the mistake by having an appropriately redacted document filed in substitution of the document containing the personal identifiers. We conclude from our review of the papers filed, including affidavits of counsel, that the failure to redact the personal identifiers at the time of the initial filing was an act of negligence and was not done with improper motive, malice or any specific intent to bring harm to Mr. Baker. It is, nonetheless, a clear violation of Local Rule 5.1.3.

While Local Rule 5.1.3 does not provide for any specific remedy, it is well recognized that the Court has the inherent power to impose reasonable sanctions where there has been a violation of its rules. In *Comuso v. National R.R. Passenger Corp.*, Civ. A. No. 97-7891, 2000 U.S. Dist. LEXIS 5427 (E.D. Pa. Apr. 26, 2000), for example, Judge Hutton of this Court relied upon this inherent authority to discipline one of the attorneys practicing before it. While there is absolutely no similarity at all between the egregious misconduct of counsel in the *Comuso* case and the simple

mistake made by AAMCO's counsel here, the case is instructive in that it confirms that an obligation like that imposed by Local Rule 5.1.3, which could potentially subject a litigant to harm, can be meaningful only if a sensible remedy is applied to a violation. It is within our inherent power to impose such a remedy in order to manage the affairs before us.

Counsel for AAMCO has advanced the position that the imposition of fees of costs "under statute or the court's inherent power requires a finding of willful bad faith on the part of the offending attorney." (Doc. 33 at 6). We do not agree. We note, for example, that certain violations of Fed. R. Civ. P. 11, which provide for the assessment of attorney fees for violations of the rule, do not necessarily require that the violation be deemed willful or malicious. *See Anjelino v. New York Times Co.*, 200 F.3d 73, 100-01 (3d Cir. 1999) (contrasting Rule 11 with statute requiring finding of bad faith).

We also find the Second Circuit Court of Appeals' reasoning in *U.S. v. Seltzer*, 227 F.3d 36 (2d Cir. 2000), both instructive and persuasive. *Seltzer* notes the difference between an attorney's obligations as an officer of the court and an attorney's obligations as a zealous advocate for his or her client. It notes that bad faith is required for imposition of sanctions due to the balance between "the vigorous pursuit of litigation [on behalf of the client] and the right to be free of litigation that is undertaken in bad faith . . . ." *Id*. at 40. This requirement goes to the attorney's role as a zealous advocate for the client. However, the court also notes that sanctions may be justified absent a finding of bad faith due to its inherent power to manage its affairs and "achieve the orderly and expeditious disposition of cases." *Id.* at 41 (citations omitted). Therefore, in instances which involve "a lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court," *id*., a court can impose sanctions absent a finding of bad faith. We conclude, under the

circumstances, that an appropriate remedy would be to impose upon AAMCO's counsel the responsibility of having to pay a reasonable counsel fee associated with having the matter made right.[6]  We accordingly conclude that the award should be a figure represented by two-thirds of the time value identified in paragraph 14 of the affidavit of Mr. Baker's counsel, or $869.00.

      An appropriate Order follows.

---

[6] We note in paragraph 14 of the Affidavit of Phillip D. Berger, attached to Mr. Baker's motion (Doc. 32 at 10-11) refers to what is collectively 5.5 hours in dealing with the information placed on PACER, considering the court's requirements for redacting information, and engaging in communications and phone calls with counsel for AAMCO, together with other activity pertaining to requests for financial information that Mr. Baker apparently received after the improper filing. While Mr. Baker argues that these requests for financial information were part of a scam initiated by someone who gained access to the improperly filed information, that allegation is not proven and it would not be proper, in our view, to include within the award of counsel fee any sums associated with that effort.  Thus, we decrease the value of the 5.5 hours by one-third.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC. | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | NO. 06-5252 |
| MARK E. BAKER | : | |
| Defendant | : | |

**ORDER**

**AND NOW,** this 25th      day of February, 2008, pursuant to the Order of the Honorable Edmund V. Ludwig of December 7, 2007 appointing the undersigned as a Special Master pursuant to Local Rule of Civil Procedure 72.1 and upon the agreement of counsel and with the concurrence of Judge Ludwig that the determination of this Magistrate Judge shall constitute the order of the district court, the Court has considered Plaintiff's Motion for Admission to Practice of James A. Goniea Pursuant to Local Rule 83.5.2 (Doc. 18), Plaintiff's Motion for Protective Order to Stop the Deposition of James A. Goniea Pursuant to Rule 26(c) (Doc. 22), Plaintiff's Motion to Strike Defendant's Jury Demand (Doc. 27), Defendant's Motion for Sanctions (Doc. 32), and the parties' various supporting materials, responses, replies, sur-replies, and supplemental briefs, as set forth in greater detail in the accompanying Memorandum Opinion, and **IT IS ORDERED** that:

1.   Plaintiff's Motion for Admission to Practice of James A. Goniea (Doc. 18) is

    **GRANTED** and Attorney Goniea is hereby permitted to participate in this case *pro hac vice* pursuant to Local Civil Rule 83.5.2(b).  This order is without prejudice to defendant's right to renew the motion to seek Mr. Goniea's disqualification "as an

    advocate at trial," *see* Pa. R.P.C. 37(a), by any renewal of this motion to be filed within twenty (20) days after the completion of the proposed deposition of Mr. Goniea;

2.     Plaintiff's Motion for Protective Order to Stop the Deposition of James A. Goniea (Doc. 22) is **DENIED** and counsel are to promptly contact chambers to arrange for a mutually convenient date within thirty (30) days from the date of this Order at which the deposition may proceed at the Federal Courthouse in the Court's jury room or adjacent conference room to allow for the Court's immediate resolution of any issues arising in the course of the deposition;

3.     Plaintiff's Motion to Strike Defendant's Jury Demand (Doc. 27) is **GRANTED**, Defendant's jury trial demand is hereby **STRICKEN**, and this case shall proceed as a non-jury case; and

4.     Defendant's Motion for Sanctions (Doc. 32) is **GRANTED IN PART** and Counsel for Plaintiff, William B. Jameson, shall, within twenty (20) days of entry of this Order, pay to defendant Mark E. Baker the sum of $869.00.

    BY THE COURT:

    /s/ David R. Strawbridge
    DAVID R. STRAWBRIDGE
    UNITED STATES MAGISTRATE JUDGE