IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AAMCO TRANSMISSIONS, INC.,** | |
| **Plaintiff,** | **CIVIL ACTION** |
| **v.** | **No. 06-CV-05252** |
| **MARK E. BAKER,** | |
| **Defendant/ Counterclaimant.** | |

**ORDER**

AND NOW, this _____ day of _____, 2008, upon consideration of Defendant/Counterclaimant Mark E. Baker's Motion in Limine, and any response thereto, it is hereby ORDERED that said motion is GRANTED and IT IS FURTHER ORDERED that the attached list of proposed trial exhibits shall be excluded from admission into evidence at the trial of this matter.

_____
HONORABLE TIMOTHY R. RICE
United States Magistrate Judge

**EXCLUDED LIST OF TRIAL EXHIBITS**

A. **Audio-Tape Recordings**

   1. Full Scale Shopping Debriefing Recording (micro-cassette) (AAMCO 3502);
   2. Modified Shopping Recording (micro-cassette) (AAMCO 3503);
   3. Full Scale Shopping Recording (micro-cassette) (AAMCO 3504); and
   4. Debriefing Recording (micro-cassette) (AAMCO 3958)

B. **Debriefing Memoranda**

   1. July 7, 2005 Memorandum re Debriefing of Shopper – Barbara Shine (AAMCO 635- AAMCO 642);
   2. September 26, 2005 Memorandum re Debriefing of Shopper – Amy Bock (AAMCO 646 – AAMCO 652);
   3. April 24, 2006 Memorandum re Debriefing of Shopper – Robert Ratini (AAMCO 685 – AAMCO 703); and
   4. May 30 ,2206 Memorandum re Debriefing of Shopper – Robert Ratini (AAMCO 716 – AAMCO 719)

C. **Shopping Memoranda**

   1. June 21, 2005 Shopping Memorandum from Riccardi to Pekula (AAMCO 631 – AAMCO 634);
   2. September 19, 2005 Shopping Memorandum from Shoemaker to Pekula (AAMCO 643 – AAMCO 645);
   3. February 13, 2006 Shopping Memorandum from McCarthy to Pekula (AAMCO 653 – AAMCO 655);
   4. February 13, 2006, Shopping Memorandum from Riccardi to Pekula (AAMCO 656 – AAMCO 679);
   5. April 20, 2006 Shopping Memorandum from Riccardi to Pekula (AAMCO 680 – AAMCO 684);
   6. June 1, 2006 Shopping memorandum from Riccardi to Pekula (AAMCO 704 – AAMCO 715); and
   7. June 1, 2006 Shopping Memorandum from Shoemaker to Pekula (AAMCO 720 – AAMCO794).

Baker\AAMCO\MotionInLimineShoppings.doc

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARK E. BAKER, <br><br> Defendant/ Counterclaimant. | CIVIL ACTION <br><br> No. 06-CV-05252 |

### DEFENDANT/COUNTERCLAIMANT MARK E. BAKER'S MOTION IN LIMINE

Defendant/Counterclaimant Mark E. Baker, by and through his undersigned counsel, hereby moves in limine to preclude from the admission into evidence at trial the following trial exhibits listed by Plaintiff:

**Audio-Tape Recordings**

1. Full Scale Shopping Debriefing Recording (micro-cassette) (AAMCO 3502);
2. Modified Shopping Recording (micro-cassette) (AAMCO 3503);
3. Full Scale Shopping Recording (micro-cassette) (AAMCO 3504); and
4. Debriefing Recording (micro-cassette) (AAMCO 3958)

**Debriefing Memoranda**

1. July 7, 2005 Memorandum re Debriefing of Shopper – Barbara Shine (AAMCO 635- AAMCO 642);
2. September 26, 2005 Memorandum re Debriefing of Shopper – Amy Bock (AAMCO 646 – AAMCO 652);
3. April 24, 2006 Memorandum re Debriefing of Shopper – Robert Ratini (AAMCO 685 – AAMCO 703); and
4. May 30 ,2006 Memorandum re Debriefing of Shopper – Robert Ratini (AAMCO 716 – AAMCO 719).

**Shopping Memoranda**

1. June 21, 2005 Shopping Memorandum from Riccardi to Pekula (AAMCO 631 – AAMCO 634);

2. September 19, 2005 Shopping Memorandum from Shoemaker to Pekula (AAMCO 643 – AAMCO 645);
3. February 13, 2006 Shopping Memorandum from McCarthy to Pekula (AAMCO 653 – AAMCO 655);
4. February 13, 2006, Shopping Memorandum from Riccardi to Pekula (AAMCO 656 – AAMCO 679);
5. April 20, 2006 Shopping Memorandum from Riccardi to Pekula (AAMCO 680 – AAMCO 684);
6. June 1, 2006 Shopping memorandum from Riccardi to Pekula (AAMCO 704 – AAMCO 715); and
7. June 1, 2006 Shopping Memorandum from Shoemaker to Pekula (AAMCO 720 – AAMCO794).

In support of this motion, Defendant/Counterclaimant Baker relies upon and incorporates herein by reference the accompanying memorandum of law.

LUNDY, FLITTER, BELDECOS & BERGER, P.C.

By: */s/ Phillip D. Berger*
Phillip D. Berger (58942)
C. Scott Spear (77642)
450 N. Narberth Avenue
Narberth, Pennsylvania 19072
(610) 668-0770
(610) 667-0552(F)

Attorneys for Defendant/Counterclaimant
Mark E. Baker

Dated: December 5, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARK E. BAKER, <br><br> Defendant/ Counterclaimant. | CIVIL ACTION <br><br> No. 06-CV-05252 |

**DEFENDANT MARK E. BAKER'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE EXHIBITS**

Defendant/Counterclaimant Mark E. Baker, by and through his undersigned counsel, hereby submits this memorandum of law in support of his motion in limine to preclude certain AAMCO proposed exhibits.

**I.  PRELIMINARY STATEMENT**

From June 2005 through May 2006, AAMCO conducted a series of covert, undercover investigations of Mr. Baker's AAMCO Center in Tallahassee, Florida (the "Center"). See AAMCO Debriefing Memoranda and Investigative Memoranda attached hereto as Exhibits "E" – "O." However, AAMCO's undercover investigations are not authorized by the Franchise Agreement entered into between Mr. Baker and AAMCO. Section 5.2 of the Franchise Agreement provides that "Franchisee acknowledges that AAMCO has the right to visit and enter the center at reasonable times, for the purpose of inspecting the center, its equipment and inventory, and to determine the nature and quality of the service rendered there, including the manner and method of the center's operation by Franchisee. Franchisee specifically agrees that neither his physical presence in the center nor his specific consent to the **inspection** shall be necessary." See Franchise Agreement at § 5.2 (emphasis added), Exhibit "P" hereto. Michael

Pekula, the Director of Consumer Affairs for AAMCO, acknowledged at his deposition on September 14, 2007, that there is a difference between center "inspections" and center "investigations." See Deposition Transcript of Michael Pekula dated September 14, 2007 ("Pekula Tr.") at 132, ll. 22-24. A true and correct copy of relevant excerpts of Mr. Pekula's deposition transcript is attached hereto as Exhibit "Q." Again, the Franchise Agreement only authorizes inspections – not investigations.

Despite this lack of authority to perform the investigations, there were two types of undercover investigations conducted by AAMCO at the Center. The first type of investigation is referred to by AAMCO as a modified shopping, and involves sending a vehicle into an AAMCO center with an induced malfunction "to find out what the center was going to do with the malfunction . . . ." Riccardi Tr. at 44, ll. 18-23. A true and correct copy of relevant excerpts of Mr. Riccardi's deposition transcript is attached hereto as Exhibit "R." The second type of investigation is referred to as a full-scale shopping by AAMCO and involves "the removal of the transmission, disassembly, complete rebuild internally, and the marking and videotaping of all the components." Id. at 45, ll. 12-16.

In both types of investigations, AAMCO investigators travel to the vicinity of the targeted center and secure a vehicle from a local resident to send into the center to be diagnosed by the center which is under investigation by AAMCO. Id. at 43, l. 15- 44, l. 23. After AAMCO manipulates the performance of the vehicle by inducing some form of malfunction, the vehicle is driven to the targeted center by either a local resident or by one of AAMCO's investigators who poses as an actual customer. Id. The individual driving the vehicle is referred to by AAMCO as a "shopper" or "driver." Pekula Tr. at 162, ll. 4-6, Ex. "Q".

Based on the documents produced by AAMCO to Mr. Baker during discovery in this matter and the testimony of AAMCO's employees during their depositions, AAMCO performed 4 modified shoppings at the Center and 1 full-scale-shopping at the Center. In all but one of the shoppings at the Center, AAMCO used non-AAMCO employees as the shoppers. Only during the modified shopping that occurred at the Center on February 11, 2006, did an AAMCO investigator perform the role of the shopper. See February 13, 2006 Shopping Memorandum from McCarthy to Pekula, Ex. "K."

In the four instances in which a non-AAMCO employee performed the role of the shopper, the AAMCO investigator purportedly would debrief the shoppers by asking them questions about what had transpired and what was said at the Center. These "debriefings" were tape-recorded by the AAMCO investigators. The tape-recordings were at some point in time submitted by the AAMCO investigators to the Consumer Affairs Department within AAMCO. At some future point in time, the tape-recordings were transcribed by someone and placed in a memorandum form. See Riccardi Tr. at 232, l. 11 – 234, l. 12, Ex. "R". When shown a copy of the transcribed memorandum purportedly prepared by the investigator and submitted to Mr. Pekula, Investigator Riccardi testified that he had never seen the memorandum before and that he had not prepared any part of the memorandum. Id. at 233, l. 1 – 234, l. 12.

The audio tape-recordings and the transcriptions thereof, which transcriptions are not verbatim, contain the hearsay testimony of the shoppers.[1] The audio tape-recordings and the transcriptions thereof also contain hearsay statements allegedly made by Mr. Baker and employees of the Center.

---

[1] The audio recordings, Exhibits "A" – "D" hereto, are being separately filed with the Court and provided to Plaintiff in CD format.

Using hearsay statements provided by the shoppers in all instances, the AAMCO investigators then prepared shopping memoranda containing a description of what allegedly occurred at the Center during the shopping and what allegedly was said at the Center by the Shoppers, Mr. Baker and Mr. Baker's employee.  <u>See</u> Shopping Memoranda attached hereto as Exs. "E" – "O."

AAMCO has listed the objectionable audio-tape recordings, debriefing memoranda and shopping memoranda as potential trial exhibits.  Specifically, AAMCO has listed:

**Audio-Tape Recordings**

1. Full Scale Shopping Debriefing Recording (micro-cassette) (AAMCO 3502), Exhibit "A" hereto;
2. Modified Shopping Recording (micro-cassette) (AAMCO 3503), Exhibit "B" hereto;
3. Full Scale Shopping Recording (micro-cassette) (AAMCO 3504), Exhibit "C" hereto; and
4. Debriefing Recording (micro-cassette) (AAMCO 3958), Exhibit "D" hereto.

**Debriefing Memoranda**

1. July 7, 2005 Memorandum re Debriefing of Shopper – Barbara Shine (AAMCO 635- AAMCO 642), Exhibit "E" hereto;
2. September 26, 2005 Memorandum re Debriefing of Shopper – Amy Bock (AAMCO 646 – AAMCO 652), Exhibit "F" hereto;
3. April 24, 2006 Memorandum re Debriefing of Shopper – Robert Ratini (AAMCO 685 – AAMCO 703), Exhibit "G" hereto; and
4. May 30, 2206 Memorandum re Debriefing of Shopper – Robert Ratini (AAMCO 716 – AAMCO 719), Exhibit "H" hereto.

**Shopping Memoranda**

1. June 21, 2005 Shopping Memorandum from Riccardi to Pekula (AAMCO 631 – AAMCO 634), Exhibit "I" hereto;
2. September 19, 2005 Shopping Memorandum from Shoemaker to Pekula (AAMCO 643 – AAMCO 645), Exhibit "J" hereto;
3. February 13, 2006 Shopping Memorandum from McCarthy to Pekula (AAMCO 653 – AAMCO 655), Exhibit "K" hereto;
4. February 13, 2006, Shopping Memorandum from Riccardi to Pekula (AAMCO 656 – AAMCO 679), Exhibit "L" hereto;

> 5. April 20, 2006 Shopping Memorandum from Riccardi to Pekula (AAMCO 680 – AAMCO 684), Exhibit "M" hereto;
> 6. June 1, 2006 Shopping memorandum from Riccardi to Pekula (AAMCO 704 – AAMCO 715), Exhibit "N" hereto; and
> 7. June 1, 2006 Shopping Memorandum from Shoemaker to Pekula (AAMCO 720 – AAMCO794), Exhibit "O" hereto.

The above listed audio-tapes and memoranda constitute inadmissible hearsay that must be excluded from the trial of this matter. The above listed hearsay also contains multiple levels of hearsay that similarly must be excluded from evidence.

## II.  ARGUMENT

### A.  The Audio-Tape Recordings and Memoranda Are Inadmissible Hearsay

The audio-tapes, debriefing memoranda and shopping memoranda constitute inadmissible hearsay under Rule 802 of the Federal Rules of Evidence. "Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Pursuant to Rule 802, "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802. There is no exception nor is there any rule that would allow for the admission of the audio-tapes or the memoranda listed by AAMCO into evidence.

#### 1.  Audio-Tape Recordings and Debriefing Memoranda

The audio-tape recordings and debriefing memoranda contain multiple layers of hearsay statements.[2] First and foremost, the proposed trial exhibits contain the hearsay statements of the shoppers selected by the AAMCO investigators. Second, the proposed trial exhibits contain the hearsay statements of AAMCO's investigators. Third, the proposed trial exhibits contain the alleged hearsay statements of Mr. Baker and the employees of the Center, as recounted by the

---

[2] Rule 805 provides that "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed. R. Evid. 805.

shoppers.  See Debriefing Memoranda, Exs. "E" – "H".  The admission of such hearsay evidence would deprive Mr. Baker of his fundamental right to cross-examine the sources of AAMCO's alleged evidence against Mr. Baker which AAMCO uses to improperly justify its termination of Mr. Baker as an AAMCO franchisee.

First, the shoppers' statements constitute improper and inadmissible hearsay that is specifically excluded by Rule 802 of the Federal Rules of Evidence.  An additional layer of inadmissible hearsay also exists as the shoppers allegedly recount want was said to them by Mr. Baker and his employees while the shoppers were "undercover" at the Center.  Notably, the shoppers were not under oath when they gave the alleged testimony and did not certify the accuracy of the statements.  See Missimer v. Tiger Machine Co., Ltd., 2005 U.S. Dist. LEXIS 21559, *8-9 (E.D. Pa. Sept. 27, 2005)(finding that "the information . . . included in the report came from the unsworn, out-of court statement" and "[n]o one with personal knowledge participated in the preparation of the investigation report").

The investigators' statements also constitute inadmissible hearsay.  None of the layers of hearsay contained on the audio-tapes or in the debriefing memoranda are admissible.

In this lawsuit, AAMCO has accused Mr. Baker and the Center of committing fraud against the public.  Compl. at ¶¶ 11-12, ECF Doc. No. 1.  AAMCO further alleges that Mr. Baker and the Center have failed to deal fairly and honestly with the public and with AAMCO.  Id.  Such serious allegations cannot be proven by hearsay statements -- particularly the hearsay statements of nonparty witnesses.[3]  Mr. Baker must be given an opportunity to cross-examine his accusers and to confront the primary sources of the alleged evidence offered against him.  Also,

---

[3] Remarkably, AAMCO has not listed the three shoppers (Barbara Shine, Amy Bock or Robert Ratini) as trial witnesses.  See Plaintiff's List of Exhibits, Other Discovery Items and Witnesses dated September 17, 2008 and attached hereto as Ex. "S."  Instead, AAMCO seems intent on relying upon their inadmissible hearsay statements in an effort to deprive Mr. Baker of his right to cross-examine the primary sources of AAMCO's purported evidence of fraud.

the audio-tapes and debriefing memoranda lack the indicia of reliability necessary to be admissible under Rule 803(6) of the Federal Rules of Evidence.  See Missimer v. Tiger Machine Co., No. 04-3443, 2005 U.S. Dist. LEXIS 21559, *9 (E.D. Pa. Sept. 27, 2005)("[a]llowing the admission of this document would be tantamount to permitting a co-worker to testify against [the party] without being subject to cross-examination or required to take an oath.").  This unjust result cannot and is not allowed by the rules.

### A. The Shoppers Selected By AAMCO Were Not Impartial And Their Hearsay Statements Are Not Reliable Evidence

The shoppers selected by AAMCO cannot be found to have been impartial and, therefore, lack any inherent indicia of trustworthiness or reliability.[4]  In fact of the three shoppers utilized by AAMCO, two of the shoppers were the family relatives of AAMCO's own investigators.  In the first modified shopping of the Center on June 21, 2005, the shopper selected by AAMCO was Barbara Shine.  See July 7, 2005 Debriefing Memorandum, Ex. "E" hereto.  Ms. Shine was the spouse of Roland Shine, AAMCO's Special Investigator at the time of the shopping.  Riccardi Tr. at 73, ll. 14-16, Ex. "R".

The shopper for the second modified shopping was Amy Bock.  See September 26, 2005 Debriefing Memorandum, Ex. "F" hereto.  While there is not any evidence to date that Ms. Bock had a personal or familial relationship with AAMCO, it certainly is noteworthy that for this, the second modified shopping, Mr. Pekula testified that Mr. Baker's Center "found and identified the problem and made an offer to do a repair that according to our technician was a reasonable offer."  Pekula Tr. at 233, ll. 3-6, Ex. "Q".  Mr. Pekula then testified that Mr. Baker's Center

---

[4] Rule 803(6) provides that a record of regularly conducted activity will not be admissible if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid. 803(6). While Mr. Baker challenges that the proffered evidence qualifies as "records of regularly conducted activity" and AAMCO bears this burden of proof, even if the Court were to find that the evidence qualifies as records of regularly conducted activity, the evidence lacks the required indicia of trustworthiness and, therefore, must still be excluded from evidence.

passed that shopping. Id. at ll. 7-9. In the next modified shopping, AAMCO did not use a shopper from outside of AAMCO and, instead, employed one of its own investigators, John McCarthy, to serve as the shopper. See February 13, 2006 Modified Shopping memorandum, Ex. "K."

In the fourth and final modified shopping of the Center, AAMCO selected Robert Ratini to perform the role of shopper.[5] See April 24, 2006 Debriefing Memorandum, Ex. "G" hereto. The AAMCO investigator assigned to conduct the modified shopping was Investigator Riccardi. The shopper, Mr. Ratini, is a family relative of Investigator Riccardi. Mr. Riccardi testified at his deposition that "[Mr. Ratini]'s a relative of – let me get this straight. My – he's my sister's husband's son, my sister's stepson." Riccardi Tr. at 291, ll. 10-13, Ex. "R".

The fact that AAMCO used shoppers related to its own investigators is particularly telling as Investigator Riccardi testified at his deposition that one of the criteria he used in selecting a shopper, as taught to him by Special Investigator Shine, is to ensure that the potential shopper does not have any relation to AAMCO. At his deposition, Investigator Riccardi testified as follows:

> **Q.** Is there a set procedure you use to brief a driver?
>
> **A.** Yeah, procedures that I – yeah, that I've come up with, yeah, that works.
>
> **Q.** What is that procedure?
>
> **A.** I will - - when I first meet the driver and/or the vehicle - - owner of the vehicle, I will make sure that they have no relation to AAMCO Transmissions. Okay? They don't have a brother, father, sister, or uncle who works for AAMCO, whoever has had any kind of experience with AAMCO at all.
>
> **Q.** Why?

---

[5] Mr. Ratini was also the shopper used by AAMCO at the full scale shopping of Mr. Baker's Center on May 8, 2006. See June 1, 2006 Shopping Memorandum, Ex. "N" hereto.

> A. Good, bad, we don't want - - we do not want them to prejudge before they go in. So in other words, if they don't have any experience in an AAMCO center, have never had a bad experience or a good experience, then that would qualify them as a driver.
>
> Q. Is this a criteria that you've established or one that's been taught to you?
>
> A. One that's been taught to me. It's nothing written, but one that's been taught to me.
>
> Q. And who taught that to you?
>
> A. Mr. Shine.

Riccardi Tr. at 98, l. 24 – p. 99, l. 24, Ex. "R".

Investigator Riccardi's testimony makes plain that as an investigator seeking an impartial shopper to perform center investigations he not only does not want someone who has a familial relationship with someone employed by AAMCO but further does not want someone who has had "any experience in an AAMCO center." Id. at 99, ll. 6-18. This valuable criteria in the selection of an impartial shopper was taught to Investigator Riccardi by Special Investigator Shine – whose wife was the shopper on the first modified shopping of Mr. Baker's Center. Id. at ll. 23-24.

In performing the modified shoppings and the subsequent full scale shopping of the Center, which investigations resulted in AAMCO terminating Mr. Baker as a franchisee, Investigator Riccardi violated his own criteria in the selection of the shoppers, and utilized not only individuals with prior AAMCO experience, but individuals with familial relationships to the investigators. Under these circumstances, it cannot be found that the hearsay statements of the shoppers contained on the audio-tapes and transcribed in the debriefing memoranda have any indicia of reliability or trustworthiness and, therefore, audio-tapes and debriefing memoranda cannot be admitted into evidence at trial.

### B. The Shopping Memoranda Prepared By AAMCO's Investigators Are Inadmissible Hearsay And Are Not Trustworthy Or Reliable Evidence

AAMCO has listed as potential trial exhibits the shopping memoranda prepared by its investigators will performing undercover investigations at the Center. See Exs. "I" – "O". The shopping memoranda are inadmissible hearsay documents that contain additional layers of hearsay in the form of statements made by the shoppers selected by AAMCO, which statements, as discussed in detail above, are not trustworthy and cannot be relied upon. Additionally, the hearsay statements of the investigators preparing the memoranda are not trustworthy. As such, the shopping memoranda lack the necessary indicia of trustworthiness and reliability necessary to allow them to be admitted into evidence at trial even if there was an allowable exception to the hearsay rule (which there is not).

#### 1. The Hearsay Statements Of AAMCO's Investigators Are Not Worthy Of The Court's Trust Or Reliable

Of the seven shopping memoranda that Mr. Baker seeks to exclude, four of the memoranda were prepared by Investigator Riccardi (Exs. "I," "L," "M," and "N"), one was prepared by Investigator McCarthy[6] (Ex. "K") and two were prepared by Investigator Shoemaker (Exs. "J" and "O"). Besides being inadmissible hearsay, the memoranda are not trustworthy as they contain the biased views of AAMCO's investigators who are not properly trained on how to perform the function of an unbiased investigator.

For example, Investigator Riccardi began working for AAMCO as a technical investigator on October 1, 2004. Riccardi Tr. at 43, ll. 3-4, Ex. "R". Investigator Riccardi testified that prior to joining AAMCO in October 2004, he had no experience in investigating transmission facilities, nor did he have any investigatory experience. Id. at 29, ll. 1-6; 70, ll. 9-

---

[6] Investigator John McCarthy was employed by AAMCO for less than a year before he ceased being an investigator. See Riccardi Tr. at 93, l. 23 – 95, l. 3, Ex. "R".

16. Investigator Riccardi also testified that he was not given any training materials related to his job as a technical investigator. Id. at 77, ll. 16-18. Investigator Riccardi also was not given any documents that described how a report was to be completed. Id. at 80, ll. 18-20. In preparing the investigation memoranda, which are the subject of this motion in limine, Investigator Riccardi described how he prepared his reports and stated "that's how I did them. I don't know how the other investigators do them." Id. at 223, ll. 16-19. Thus, there is no uniformity in how AAMCO investigators prepare the memoranda.

In December 2004, Investigator Riccardi first met Mr. Baker when he visited the Center with Investigator Shine to perform a center inspection. Id. at 172, l. 22 – 173, l. 11. Investigator Riccardi, having been on the job as a technical investigator for less than three months at that time and with no prior experience as an investigator, testified that he had reason to believe that fraudulent activities were occurring at the Center. Id. at 188, ll. 6-10. This center visit occurred approximately six months before the first modified shopping, and Investigator Riccardi already believed that "fraud" was occurring at the Center.[7]

As discussed above, Investigator Riccardi when conducting the investigations of the Center utilized one of his own relatives, and also used the wife of Investigator Shine, as shoppers to gather evidence against Mr. Baker and the Center. As he testified to at his deposition, the use of relatives was contrary to the criteria that was taught to him by Investigator Shine on the selection of shoppers. See Id. at 98, l. 24 – 99, l. 24.

Also, his own hearsay statements based on his personal knowledge contained in the reports cannot be relied upon. As an example, in the February 13, 2006 Shopping Memorandum

---

[7] After the very first shopping that occurred in June 2005, Investigator Riccardi testified that "I am fully confident that they would have sold an unnecessary service, yes. They were prepared to. If she would have said, yeah, go ahead, I'm sure they would have." Thus, there can be no doubt that this "impartial" investigator had already made up is mind against the Center.

(Ex. "L"), Investigator Riccardi states, "I induced an external malfunction by disconnecting the power feed wire from the case connector." February 13, 2006 Shopping Memorandum at 1, Ex. "L." While the memorandum provides that Investigator Riccardi disconnected the power feed wire from the case connector, the fact is that Investigator Riccardi cut the power feed wire "in the harness leading to the case connector on the transmission." Riccardi Tr. at 248, l. 21 –249, l, Ex. "R". 1. While the memoranda suggests that Investigator Riccardi simply disconnected the wire, the reality is that Investigator Riccardi actually peeled back the plastic covering on the harness six to eight inches, cut the wire, and then put the cut wire back in the plastic cover so that the wire was completely concealed. Id. at 249, l. 2 –250, l. 2. One can only imagine why this detail of concealment was left out of the memorandum.

Likewise, Investigator Shoemaker's memoranda cannot be trusted. For example, in the September 19, 2005 Shopping Memorandum (Ex. "J"), Investigator Shoemaker wrote that the shopper "Ms. Bock had to insist on a copy of the repair order." September 19, 2005 Shopping Memorandum at 3, Ex. "J." According to the memorandum, Investigator Shoemaker had "debriefed Ms. Bock on what had transpired at the center. (For further details see drivers debriefing)." Id. If reliable, the memorandum would have us believe that Ms. Bock had to "insist" on getting a copy of the repair order. In fact, the September 26, 2005 Debriefing Memorandum of Shopper Amy Bock (Ex. "F") contains no such testimony. See September 26, 2005 Debriefing Memorandum of Shopper Amy Bock, Ex. "F." When shown the Bock Debriefing Memorandum and asked to point out where Ms. Bock testified that she had to insist on a copy, Investigator Shoemaker testified that "I don't see anywhere that she makes that statement. It may have been my interpretation." Shoemaker Tr. at 197, ll. 12-22. A true and correct copy of relevant excerpts from Mr. Shoemaker's deposition transcript is attached hereto

as Exhibit "T." Thus, not only do the shopping memoranda contain hearsay statements from nonparty witnesses, but also contain the investigators biased interpretations of what may or may not have been said to them.

The shopping memoranda are inadmissible hearsay. There are no exceptions to the hearsay rule that would allow them into evidence. Moreover, as demonstrated, the memoranda lack the necessary indicia of trustworthiness and, therefore, cannot be relied upon as competent evidence. Therefore, the shopping memoranda must be excluded from evidence.

### 2. The Shopping Memoranda Contain The Inadmissible Hearsay Statements Of AAMCO's Shoppers

In addition to the shopping memoranda being inadmissible hearsay, the investigators in preparing the memoranda relied upon and incorporated into the shopping memoranda the inadmissible hearsay of the shoppers. Both Investigator Riccardi and Investigator Shoemaker testified that they used the testimony from the debriefings in preparing the shopping memoranda. See Riccardi Tr. at 224, l. 18 – 225, l. 5, Ex. "R"; Shoemaker Tr. at 197, l. 24 – 198, l. 3, Ex. "T". Investigator McCarthy's only shopping memorandum contains hearsay statements allegedly made by Mr. Baker's employee "Charles." See February 13, 2006 Modified Shopping Memorandum at 2, Ex. "K."[8]

As discussed above, the debriefing reports are inadmissible hearsay and are also inherently untrustworthy and unreliable. As the debriefings are inadmissible, they cannot be allowed to enter into evidence through the equally untrustworthy and unreliable shopping memoranda. See Fed. R. Evid. 805. Similarly, the hearsay statements contained in Investigator McCarthy's memorandum are inadmissible. See Clevenger v. CNH Am., LLC, No. 1:06-CV-1006, 2008 U.S. Dist. LEXIS 45225, *20 (M.D. Pa. June 9, 2008)('[a] document containing

---

[8] During this modified shopping, Investigator McCarthy played the role of shopper. See February 13, 2006 Modified Shopping Memorandum, Ex. "L".

multiple levels of hearsay is admissible only if each level of hearsay is independently admissible.'").

Under these circumstances and given the serious allegations made by AAMCO against Mr. Baker and the Center, AAMCO cannot be allowed to introduce untrustworthy and unreliable hearsay evidence produced by its biased investigators and by their hand selected familial shoppers.

The Court must properly exclude the shopping memoranda from evidence at trial.

### III.  CONCLUSION

For the foregoing reasons, defendant/ counterclaimant Mark E. Baker respectfully requests the Court to grant his motion in limine to exclude the audio-tape recordings, debriefing memoranda and the shopping memoranda.

    Respectfully submitted,

    LUNDY, FLITTER, BELDECOS & BERGER, P.C.


By:   */s/ Phillip D. Berger*
    Phillip D. Berger (58942)
    C. Scott Spear (77642)
    450 N. Narberth Avenue
    Narberth, Pennsylvania 19072
    (610) 668-0770
    (610) 667-0552(F)

    Attorneys for Defendant/Counterclaimant
    Mark E. Baker

Dated: <u>December 5, 2008</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AAMCO TRANSMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARK E. BAKER, <br><br> Defendant/ Counterclaimant. | CIVIL ACTION <br><br> No. 06-CV-05252 |

CERTIFICATE OF SERVICE

I, Phillip D. Berger, Esquire, hereby certify that a true and correct copy of the foregoing Defendant/Counterclaimant Mark E. Baker's Motion in Limine, Memorandum of Law and proposed order was served this date upon the following parties by first class mail, postage prepaid:

> William B. Jameson, Esquire
> AAMCO Transmissions, Inc.
> 201 Gibraltar Road
> Horsham, Pennsylvania 19044
> Attorney for Plaintiff

> LUNDY, FLITTER, BELDECOS & BERGER, P.C.

> By:  */s/ Phillip D. Berger*
> Phillip D. Berger (58942)
> C. Scott Spear (77642)
> 450 N. Narberth Avenue
> Narberth, Pennsylvania 19072
> (610) 668-0770
> (610) 667-0552(F)

> Attorneys for Defendant/Counterclaimant
> Mark E. Baker

Dated: <u>December 5, 2008</u>