## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AAMCO TRANSMISSIONS, INC.** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MARK E. BAKER** | : | **NO. 06-CV-05252** |
| **Defendant** | : | |

### MEMORANDUM OPINION

**TIMOTHY R. RICE**
**U.S. MAGISTRATE JUDGE**                                    **December 16, 2008**

This breach of contract case requires consideration of the requirements for expert testimony under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589 (1993). The issue is whether defendant Mark E. Baker's experts may opine as to liability and the amount of damages Baker suffered as a result of plaintiff AAMCO Transmissions, Inc. ("ATI")'s alleged breach of contract.

<u>Daubert</u> is a rule of flexibility, liberally construed to allow admissibility of expert testimony. <u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237, 243 (3d Cir. 2008). Exclusion of expert testimony is the exception rather than the rule because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Fed. R. Evid. 702 (advisory committee notes) (citing <u>Daubert</u>, 509 U.S. at 595). Guided by these principles, and for the following reasons, I deny Plaintiff's Motion in Limine to Exclude the Testimony of Defendant's Liability and Damages Experts.

I.    Background

On July 11, 2003, AAMCO Transmissions, Inc. ("ATI") entered into a franchise

agreement with Baker to allow Baker to operate an AAMCO Transmission Center (the "Center")

in Tallahassee, Florida.  After conducting a series of undercover customer visits, or "shoppings,"

at the Center, ATI terminated the franchise agreement because Baker failed to deal fairly and

honestly with the public.  Baker challenges the accuracy of the undercover investigations and

argues ATI improperly terminated the franchise agreement.  When Baker did not close the

Center after ATI terminated the franchise agreement, ATI brought this trademark infringement,

unfair competition, and breach of contract action against him.  Baker filed a counterclaim

alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and

intentional interference with existing or prospective contractual relationships.

ATI filed a motion in limine (Doc. No. 70) to exclude the testimony of Baker's liability

expert, Ira Waldman, and Baker's damages expert, Ratner, Lynn & Co. LLC (the "Ratner

Firm").  ATI contends Waldman failed to "propose any opinions within a reasonable degree of

scientific certainty" and the Ratner Firm "purposely duplicates and overstates damage items."

See Plaintiff's in Limine Motion to Exclude the Testimony of Defendant's Liability and

Damages Experts at Exhibit A (Document No. 70), AAMCO v. Baker, No. 06-5252 (E.D. Pa.

filed Dec. 5, 2008) [hereinafter "Plaintiff's Motion"].  Neither claim has merit.

II.    Legal Standard

The party offering an expert must establish by a preponderance of the evidence the

qualifications of the expert witness and the expert opinion's compliance with Federal Rule of

Evidence 702.  See Daubert, 509 U.S. at 592-93 (citing Fed. R. Evid. 104(a)); Robinson v.

Hartzell Propeller, Inc., 2007 WL 2571447, *4 (E.D. Pa. Aug. 30, 2007) (DuBois, J) (citing In re

TMI Litig., 193 F.3d 613, 663 (3d Cir. 1999)). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 has "'a liberal policy of admissibility.'" Pineda, 520 F.3d at 243 (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)). However, an expert must satisfy the three "restrictions on expert testimony: qualification, reliability and fit." Schneider ex re. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 741-43 (3d Cir. 1994) ("Paoli II")).

Qualification requires the witness possess specialized expertise, Pineda, 520 F.3d at 244 (citing Schneider, 320 F.3d at 404), which encompasses a broad range of knowledge, skills, and training, Pineda, 520 F.3d at 244 (citing Paoli II, 35 F.3d at 741)). An "expert's testimony is not limited to the area in which he or she [] specialize[s]," but "the party offering the expert must demonstrate that the expert has the necessary expertise." Ferris v. Pa. Fed'n Bhd. of Maint. Of Way Employees, 153 F. Supp. 2d 736, 743 (E.D. Pa. 2001) (DuBois, J.). If the expert testimony falls outside a witness's expertise, I should exclude it. Id. Nevertheless, I may not exclude proposed expert testimony simply because I do not deem the expert the best qualified or because the expert is without the appropriate specialization. Holbrook, 80 F.3d at 782. The "best" qualified is a matter of weight upon which reasonable jurors may disagree. Id. A certain degree or background is not required under the flexibility of Rule 702. See id.

Similarly, "an expert's testimony is admissible so long as the process or technique used

3

in formulating the opinion is reliable," Pineda, 520 F.3d at 247 (citing Paoli II, 35 F.3d at 742),

and the expert's principles and methods are reliably applied to the facts of the case, Fed. R. Evid.

702 (advisory committee notes).   The "expert's opinions must be based on the methods and

procedures of science, rather than on subjective belief or unsupported speculation." Paoli II, 35

F.3d at 742 (citations and internal quotations omitted).   Thus, "the expert must have 'good

grounds' for his or her belief." Id. (quoting Daubert, 509 U.S. at 590).

    In evaluating whether a particular methodology is reliable, and reliably applied to the

facts, several factors may be considered, including:

> (1) whether a method consists of a testable hypothesis; (2) whether
> the method has been subjected to peer review; (3) the known or
> potential rate of error; (4) the existence and maintenance of
> standards controlling the technique's operation; (5) whether the
> method is generally accepted; (6) the relationship of the technique
> to methods which have been established to be reliable; (7) the
> qualifications of the expert witness testifying based on the
> methodology; and (8) the non-judicial uses to which the method
> has been put.

Paoli II, 35 F.3d at 742 n.8.   This list is "'neither exhaustive nor applicable in every case.'"

Pineda, 520 F.3d at 248 (quoting Kannankeril, 128 F.3d at 806-07)).   Ultimately, the purpose of

the reliability requirement "is to make certain an expert, whether basing testimony upon

professional studies or personal experience, employs in the courtroom the same level of

intellectual rigor that characterizes the practice of an expert in the field." Kumho Tire Co. v.

Carmichael, 526 U.S. 137, 152 (1999).   As such, the "focus must be solely on principles and

methodology, not on the conclusions they generate." Paoli II, 35 F.3d at 744.   I must examine

the expert's conclusions to determine whether they reliably follow from the facts known to the

expert and the methodology used. Heller v. Shaw Industries, Inc., 167 F.3d 146, 153 (3d Cir.

1999). "A court may conclude that there is simply too great a gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

"While a litigant has to make more than a prima facie showing that his expert's methodology is reliable . . . 'the evidentiary requirement of reliability is lower than the merits standard of correctness.'" Pineda, 520 F.3d at 247 (quoting Paoli II, 35 F.3d at 744). I have significant latitude both in deciding "how to test an expert's reliability" and in deciding "whether or not the expert's relevant testimony is reliable." Kumho, 526 U.S. at 152. The "'inquiry envisioned by Rule 702 is . . . a flexible one.'" Pineda, 520 F.3d at 248 (quoting Daubert, 509 U.S. at 594)).

If an expert's testimony rests on "good grounds . . . it should be tested by the adversary process - competing expert testimony and active cross-examination . . . ." United States v. Mitchell, 365 F.3d 215, 244 (3d Cir. 2004); Robinson, 2007 WL 2571447. at *5. "A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination." Mitchell, 365 F.3d at 244 (quoting Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002)). Vigorous cross-examination, as Professor Wigmore noted, is "beyond any doubt the greatest engine ever invented for discovery of truth." Watkins v. Sowders, 449 U.S. 341, 349 n.4 (1981) (citing 5 J. Wigmore, Evidence § 1367, p. 32 (J. Chadbourn rev. 1974)); see also Fed. R. Evid. 702 (advisory committee notes) (citing Daubert, 509 U.S. at 595).

In assessing the third restriction on the admissibility of expert testimony, the testimony's "fit," the Court must ascertain whether the testimony is "relevant for the purposes of the case" and whether it "assist[s] the trier of fact." Schneider, 320 F.3d at 404. This "helpfulness

5

standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. (quoting Daubert, 509 U.S. at 591-92).  Finally, in a bench trial, I may revisit a pre-trial reliability determination during trial if the proffered facts prove unfounded.  See In re Salem, 465 F.3d 767, 777 (7th Cir. 2006).

III.    Discussion

   A.    Ira Waldman

ATI asserts Waldman's opinion on liability is unreliable because he failed to identify any methodology and he "assert[ed] facts he identified for the reader's consideration" instead of drawing any conclusions "within reasonable scientific certainty."  See Plaintiff's Motion at 10. Additionally, ATI asserts Waldman's testimony would not be helpful at trial.  ATI does not challenge Waldman's qualifications or the fit of the testimony under Rule 702.

First, Waldman's opinion is reliable because it relied on "good grounds." His opinion was based on automotive industry standards, see Paoli II, 35 F.3d at 742, which included diagnostic records from the Center, recommendations made by a Center technician, ATI's reports, automobile industry charts and diagrams, and Waldman's extensive experience in the automobile repair industry.  Id.; compare Trustees of Chicago Painters and Decorators Pension v. Royal Int'l Drywall and Decorating, 493 F.3d 782, 787-88 (7th Cir. 2007) (experts were qualified to offer opinions on rate of drywall taping, given their specialized knowledge of drywall installation based on extensive practical experience), with United States v. Chang, 207 F.3d 1169, 1172-73 (9th Cir. 2000) ("extremely qualified" expert in international finance was properly precluded from testifying about validity of certificate in question, because identification of counterfeit securities was beyond witness's expertise).  Waldman's qualifications assist in establishing the reliability of his methodology.  See id. (qualifications listed as a factor to

6

determine reliability); <u>Robinson</u>, 2007 WL 2571447, at *4 n.7 (qualifications may enhance the reliability of expert testimony).  Waldman's curriculum vitae lists his vast professional experience, training, and certifications regarding automobile repair and inspections.  <u>See</u> Plaintiff's Motion at Exhibit A.  For example, for the past ten years, he has owned and worked as a senior technician of Point Beach Automotive, he is an automotive technology instructor, an automotive technology specialist, an automotive technician, and he is affiliated with the National Forensic Consultants.  <u>See</u> <u>id.</u>

Such expertise justifies the reliability of Waldman's methodology.  <u>See, e.g., Schneider,</u> 320 F.3d at 406 (doctor's experience "renders his testimony reliable [and] demonstrates that his testimony is based on good grounds."); <u>Keller v. Feasterville Family Health Care Ctr.,</u> 557 F. Supp.2d 671, 677 (E.D. Pa. 2008) (doctor's extensive professional experience justified reliability of his methodology); <u>Lillis v. Lehigh Valley Hosp. Inc.,</u> 1999 WL 718231, at *7 (E.D. Pa. Sept. 3, 1999) (Van Antwerpen, J.) (testimony reliable because based on sound methods of expert's knowledge of the policy standards through his clinical experience and serving on committees to draft such policies).  Whether his opinions comport with prevailing automotive repair practices and standards will be easily probed at trial.

Second, contrary to ATI's argument, Waldman states conclusions in his report.  For example, he finds the procedures performed and the additional time requested by the Center were within "acceptable industry standards," the fees charged by the Center were reasonable, and the malfunction ATI induced in one of the vehicles would not "occur under real world conditions."  <u>See</u> Plaintiff's Motion, at Exhibit A at 5, 6, 12-13.  Although Waldman will be precluded from making any factual findings at trial, he will be permitted to opine about the reasonableness of the fee charged by the Center, whether the work the Center performed was

7

necessary or met industry standards, and the procedures and practices ATI used to conduct the investigations.

Thus, under Rule 702's flexible inquiry, I find Waldman's opinion admissible because the process used in formulating and applying his opinion is reliable. See Pineda, 520 F.3d at 247. I need not find his methodology has the best foundation or is correct. See id.; Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000). Any weaknesses or inadequacies ATI believes exist with the facts and assumptions of Waldman's conclusions can be highlighted through effective cross-examination. See Keller, 557 F. Supp.2d at 678 (defects in doctor's methodology can be challenged on cross-examination); Mitchell, 365 F.3d at 244; Lee v. Taekwondo Union, 2006 WL 5240611, at *4 (D. Haw. Jan. 26, 2006) (expert's assumption of a person's work-life expectancy is admissible but subject to vigorous cross-examination).

B.     The Ratner Firm

ATI seeks to exclude the testimony of Baker's damages expert, the Ratner Firm, as unreliable because its chosen methodology duplicates and overstates Baker's alleged damages. See Plaintiff's Motion at 14. ATI does not challenge the Ratner Firm's qualifications or the fit of the testimony under Rule 702.

ATI objects to the Ratner Firm's use of both the net present value method and the fair market value method to calculate Baker's alleged damages. ATI does not argue these methodologies themselves are unreliable, rather it disagrees with the Ratner Firm's decision to consider the cumulative results of these methodologies. See id. at 13. ATI also objects to the Ratner Firm's use of a "risk-free rate" to calculate the net present value of Baker's earnings, and the Ratner Firm's refusal to account for Baker's duty to mitigate and Baker's shared ownership interest with a third party. See id. at 14.

8

After reviewing the expert reports submitted, and ATI's arguments as to why the Ratner Firm's testimony should be excluded, I reject ATI's challenge that the Ratner Firm's methodologies are "unreliable." A close examination of ATI's argument reveals it merely disagrees with the result of the Ratner Firm's report, specifically the opinions, conclusions, and figures the Ratner Firm employed in calculating damages. See Argue v. David Davis Enterprises, Inc., 2008 WL 450097, at *6 (E.D. Pa. filed Feb. 15, 2008) (Pratter, J.). Whether the Ratner Firm reached the correct result is an issue for trial; it does not provide a basis for excluding the testimony altogether. See id. Any weaknesses or inadequacies ATI believes exist with the Ratner Firm's damages calculation can be highlighted through effective cross-examination. See id; see also Mitchell, 365 F.3d at 244; Lee 2006 WL 5240611, at *4.

An appropriate Order follows.[1]

---

[1] Based on the existing record and the limited challenge to the expert testimony, I conclude there is no need for a Daubert evidentiary hearing. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AAMCO TRANSMISSIONS, INC.<br>        Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARK E. BAKER<br>        Defendant | : | NO. 06-CV-05252 |

### ORDER

AND NOW, this 16th day of December, 2008, upon consideration of the parties' filings,
it is ORDERED that Plaintiff's motion in limine (Doc. No. 70) is DENIED for the reasons stated
in the accompanying Memorandum Opinion.

BY THE COURT:

TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE